___

SO ORDERED,

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: June 14, 2017**

The Order of the Court is set forth below. The docket reflects the date entered.
___

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: JAMIE LEE HOUSE and DOMITA TAWNEE HOUSE | CASE NO. 16-51076-KMS |
| DEBTORS | CHAPTER 13 |
| JAMIE LEE HOUSE and DOMITA TAWNEE HOUSE | DEBTORS/PLAINTIFFS |
| V. | ADV. NO. 16-06026-KMS |
| CRAFT AUTO SALES, LLC and BRAD J. CRAFT | CREDITORS/DEFENDANTS |

## MEMORANDUM OPINION

This matter came on for trial on February 21, 2017. Adv. Dkt. No. 46.[1] Jamie Lee House and Domita Tawnee House brought suit for turnover of property, contempt, and violation of the automatic stay. The Court, having considered the evidence, finds that Craft Auto Sales, LLC, willfully violated the automatic stay.

---

[1] Unless stated otherwise, citations to the record are as follows: (1) citations to docket entries in the adversary proceeding, Adv. Proc. No. 16-06026-KMS, are cited as "Adv. Dkt. No. ___"; and (2) citations to docket entries in the main bankruptcy case, Case No. 16-51076-KMS, are cited as "Dkt. No. ___".

1

I. Jurisdiction

The Court has jurisdiction over the parties to and the subject matter of this Adversary Proceeding pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), and (G).

II. Findings of Fact

On February 20, 2014, Jamie Lee House and Domita Tawnee House purchased a 2006 Pontiac Grand Prix from Craft Auto Sales, LLC ("Craft Auto"), and Craft Auto maintained a security interest in the vehicle. Brad J. Craft is the owner of Craft Auto. On June 23, 2016, Craft Auto repossessed its collateral. The Houses filed a petition for Chapter 13 bankruptcy relief on June 27, 2016.[2] Dkt. No. 1.

On the day of filing, counsel for the Houses contacted Craft Auto to provide notice of the bankruptcy and request the return of the vehicle. Adv. Dkt. No. 48 at 11-12. On July 8, 2016, the Houses filed this adversary proceeding because the vehicle had still not been turned over to them. Adv. Dkt. No. 1. The Court set a turnover hearing for July 21, 2016. Adv. Dkt. No. 2. At the hearing, the Court was informed that the vehicle had been turned over the previous day. *See* Adv. Dkt. No. 8. In the intervening time, Craft Auto and counsel for the Houses had been in communication regarding the vehicle.

On January 2, 2017, the Houses moved for partial summary judgment, seeking a determination of Craft Auto's liability for willful violation of the automatic stay but not a determination of damages. Adv. Dkt. No. 16. On February 2, 2017, the Court denied the motion

---

[2] Because this was the Houses' second bankruptcy case pending within one year, they moved for an extension of the automatic stay under Section 362(c)(3)(B). Dkt. No. 7. This motion was granted as unopposed. Dkt. No. 21. The Houses previously filed for bankruptcy in 2013 and 2015. *See In re House*, No. 13-52177 (Bankr. S.D. Miss. filed Nov. 1, 2013) (dismissed on February 23, 2015 for nonpayment); *In re House*, No. 15-50532 (Bankr. S.D. Miss. filed Mar. 30, 2015) (dismissed on June 7, 2016 for nonpayment).

"find[ing] that significant questions of material fact remain regarding what negotiations took place between the Houses and Craft Auto and when and if those negotiations broke down." *In re House*, Bankr. No. 16-51076, Adv. No. 16-06026, 2017 WL 456418, at *3 (Bankr. S.D. Miss. Feb. 2, 2017).

On February 21, 2017, the Court heard this matter at trial. Adv. Dkt. No. 46. Blake Tyler, Joy Hall, and Domita House ("Domita") testified for the Houses. Lori Miller testified for Craft Auto. Tyler is employed as an attorney at Gadow / Tyler, PLLC, which represents the Houses in their bankruptcy and this adversary, and Hall is a paralegal at the same firm. Miller has been the general manager at Craft Auto for the last twenty-two years. At the conclusion of the Houses' case in chief, the Court granted Brad J. Craft's unopposed ore tenus motion that he be dismissed as a party. Adv. Dkt. No. 48 at 73.

### III. Conclusions of Law

Because Brad J. Craft has been dismissed as a party and because the vehicle was turned over, the only issue remaining before the Court is whether Craft Auto willfully violated the automatic stay. Although the Houses raised the possibility of a finding of contempt related to a stay violation in their complaint, they did not argue this theory at trial, and the Court considers it abandoned. *See City of Canton v. Nissan N. Am., Inc.*, 870 F. Supp. 2d 430, 437 (S.D. Miss. 2012) ("Failure to address a claim results in the abandonment thereof."). Therefore, the Court only examines this claim under Section 362 of the Bankruptcy Code.

A. Willful Violation of the Automatic Stay

"When a bankruptcy petition is filed, an automatic stay operates as a self-executing injunction. The stay prevents creditors from taking any collection actions against the debtor or the property of the debtor's estate for pre-petition debts." *Campbell v. Countrywide Home Loans, Inc.*,

545 F.3d 348, 354-55 (5th Cir. 2008). "Congress has provided a debtor with a private right of action for any 'willful violation'" of the automatic stay. *In re Adams*, 516 B.R. 361, 368 (Bankr. S.D. Miss. 2014) (quoting *Campbell*, 545 F.3d at 355). The Bankruptcy Code provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1) (2010). For a plaintiff to recover statutory damages,[3] "(1) the defendant must have known of the existence of the stay; (2) the defendant's acts must have been intentional; and (3) these acts must have violated the stay." *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 302 (5th Cir. 2005).

The Court, in ruling on the motion for partial summary judgment, previously found that the Houses had satisfied the first and third elements of this claim. *In re House*, 2017 WL 456418, at *3 (finding that "Craft Auto concede[d] it received notice of the filing of the bankruptcy petition" and that "[b]ecause Craft Auto kept the vehicle after the Houses filed for bankruptcy relief, it violated the automatic stay").

As to the second element, "[a] willful violation does not require a specific intent to violate the automatic stay. . . Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was 'willful'. . . ." *In re Chesnut*, 422 F.3d at 302 (internal quotation omitted). "Recogniz[ing] that a good faith negotiation for return of a vehicle postpetition is not a willful violation of the automatic stay," the Court declined to determine on a motion for summary judgment whether Craft Auto's failure to return the vehicle intentionally violated the stay. *In re House*, 2017 WL 456418, at *3 (citing *In re Zaber*, 223 B.R. 102, 107 (Bankr. N.D. Tex. 1998)).

---

[3] *In re Chesnut* discusses the elements of a violation of the automatic stay under Section 362(h), but this section "was re-codified into section 362(k) per the Bankruptcy Abuse Prevention Consumer Protection Act of 2005. . . ." *Young v. Repine (In re Repine)*, 536 F.3d 512, 517 n.4 (5th Cir. 2008).

But having "receive[d] a full presentation of evidence and testimony at trial," the Court is now ready to make that determination. *See id.* (citing *Osherow v. Porras (In re Porras)*, 312 B.R. 81, 137 (Bankr. W.D. Tex. 2004)).

Tyler testified that after his firm failed to reach Miller at Craft Auto on June 28 and 29, 2016, in order to provide notice of the bankruptcy, notice was faxed to Craft Auto. Adv. Dkt. No. 48 at 13-14. Hall testified that it was she who had attempted to contact Miller and who ultimately faxed the notice of bankruptcy. Adv. Dkt. No. 48 at 39-42. Hall testified that she spoke with Miller after the fax was sent and on the same date and that Miller "understood that this was [the Houses'] third bankruptcy and [Craft Auto] would like insurance, 90 days proof of insurance on the vehicle." Adv. Dkt. No. 48 at 43. Miller testified that "it was [her] understanding that [the vehicle] was going to be abandoned because of the time that had lapsed, you know, from the repossession and, you know, it was a second dismissal. . . ." Adv. Dkt. No. 48 at 79. On cross examination, Miller elaborated that she

> called [Hall], the same day that [Miller] received the notification and, you know, told her that [Miller] thought that the vehicle was abandoned because of the condition in [sic] it and that, you know, it's the second time on the dismissal and it's been [Miller's] experience at Craft Auto Sales that when they're dismissed, they usually don't get them back. They're, you know, tore up and not worth it.

Adv. Dkt. No. 48 at 93. Hall testified that she spoke again with Miller the next day "about the repo fees and again about the insurance. . . ." Adv. Dkt. No. 48 at 44. Miller testified that she spoke with Hall again

> [t]o find out if she knew anything about whether or not, you know, they were going to abandon the vehicle and she stated that she doubted that they were going to abandon it because that was their only transportation and [Miller] told her to see if her -- their attorney would get them to pay the recovery fee that [Craft Auto] had already had to pay. . . .

5

Adv. Dkt. No. 48 at 80. Tyler testified that he spoke with Miller regarding "the fact that the stay was in place" and that Miller "wanted proof of insurance and the . . . repossession fee and a storage fee reimbursed." Adv. Dkt. No. 48 at 14. He further testified that "in [his] mind, yes, it was made very clear" in that conversation that the Houses wanted their car back. Adv. Dkt. No. 48 at 15. Miller denied that Craft Auto was seeking reimbursement for any storage fees. Adv. Dkt. No. 48 at 80.

Hall testified that she spoke with Miller on July 6, the same date the proof of insurance was faxed to Craft Auto, and that Miller "said at that time that they had concerns about the vehicle being put through the [Chapter 13] plan. Because of the value of it, they were afraid that the clients would abandon the vehicle eventually in the bankruptcy and that the value, you know, would be nothing." Adv. Dkt. No. 48 at 45. Tyler testified that after the proof of insurance was faxed, he spoke with Miller again either the next day or day after and that she "still . . . insiste[d] upon the repossession fee being paid even though insurance had been provided." Adv. Dkt. No. 48 at 17. After this conversation, Tyler filed the adversary complaint. Adv. Dkt. No. 48 at 17-18; Adv. Dkt. No. 1. Tyler spoke again with Miller on July 14. Adv. Dkt. No. 48 at 19. Tyler testified that

> Ms. Miller expressed concerns about this being the House's [sic] third filing, that the insurance policy had lapsed on numerous occasions in the past. You know, I let her know that the adversary proceeding had been filed, that an LLC and a corporation could not represent themselves before the bankruptcy court so that they would have to hire a lawyer and, you know, possibly pay my fees and costs . . . I mean, I would say negotiations failed on the 7th or the 8th, but, yes, in my mind that was the, you know, that made it clear that we were going to attend a hearing on the 21st down here.

Adv. Dkt. No. 48 at 20-21. On cross examination, Tyler reiterated that "[i]n [his] mind, the negotiations broke down on the 7th, otherwise, [he] would not have filed an adversary proceeding." Adv. Dkt. No. 48 at 27. Hall also testified that after her conversation with Miller on July 6 that she felt like she had done all she could do to work with Craft Auto. Adv. Dkt. No. 48 at 46. On cross

6

examination, Hall testified that although she "believe[d] they were being difficult in the process," Craft Auto was trying to negotiate the return of the vehicle. Adv. Dkt. No. 48 at 51. On cross examination, Miller testified that "[u]pon receipt of the insurance," she knew that the Houses did indeed want their car back but denied that Tyler had discussed the possibility of filing an adversary proceeding with her. Adv. Dkt. No. 48 at 96, 100.

The Court lastly notes that Domita testified that she spoke with someone other than Miller at Craft Auto twice before her vehicle was returned but that the subject of her conversations was just the return of the personal items in the vehicle. Adv. Dkt. No. 48 at 56-58. On cross examination, Domita denied ever having told anyone that she intended to abandon the vehicle. Adv. Dkt. No. 48 at 69-70.

The Court previously acknowledged that a "good faith negotiation" does not willfully violate the stay. *See In re House*, 2017 WL 456418, at *3. But there are few matters that can be negotiated, and the Bankruptcy Code provides multiple opportunities for a secured creditor to protect its interest.[4] Rather than proactively seeking relief from the Court, Craft chose to refuse to turn over the Houses' vehicle until the eve of the turnover hearing. Tyler testified that it is his experience that this Court requires that a debtor's collateral be insured before the Court orders turnover. Adv. Dkt. No. 48 at 15. This is because the Court equates a lack of insurance with a lack of adequate protection of the collateral. *See* 11 U.S.C. § 362(d)(1). It is on this position alone that Craft Auto can hang its negotiating hat in this case, and after the Houses provided proof of insurance, Craft Auto was no longer negotiating in good faith but rather improperly relying on its belief the Houses intended to abandon the vehicle when all evidence pointed to the contrary.

---

[4] First, Craft Auto could have contested the Houses' motion to extend the automatic stay under Section 362(c)(3). Second, Craft Auto could have moved for relief from the automatic stay under Section 362(d). Finally, if Craft Auto was concerned that irreparable damage to the vehicle was imminent, it could have moved for stay relief under Section 362(f).

7

Further, it is clear that the idea of abandonment came, not from the Houses, but from Craft Auto. Consequently, Craft Auto willfully violated the automatic stay by retaining the vehicle past the point of any good faith negotiation. The Court now turns to a calculation of damages based on the testimony at trial.

B. Damages

"[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages . . . and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

1. Actual Damages

Domita testified as to the contents of the vehicle at the time it was repossessed: "Well, I have four kids, so their birth certificates[5] [were] in there. I had two JanSport book bags, two pair of Nike Air shoes. I had two pair of slack[s], two sweaters, a coat, a jack, some jumping cables, my ID badge, my tag, some glasses and CDs." Adv. Dkt. No. 48 at 54. Domita further testified that when she contacted Craft Auto to retrieve her belongings that "the lady that [she] spoke to told [her that her] stuff had been destroyed and [her] car was going to auction." Adv. Dkt. No. 48 at 56. Domita also testified to other damages caused by the loss of the vehicle:

> Like I said, I work [as a school bus monitor], so we [are] out for the summer. So I draw my unemployment during the summertime and there was a job offered to me to babysit this lady's kids three days a week at $150 and I wasn't able to take the job that's supposed to have started July the 1st because I didn't have any transportation. My kids missed doctor's appointment[s], my husband missed a back injection that he's supposed to have had on the 30th, June the 30th. My smallest kids . . . had a doctor's appointment at the health department, I was unable to make it. And on the 5th of July, [one of my kids] had an eye appointment. I couldn't make that one. And on the 13th, [another child] had a doctor's appointment and on the 14th [my husband] had to go back for [a] back injection.

---

[5] Domita testified that the birth certificates were in her car because multiple children were in the process of acquiring either a learner's permit or driver's license. Adv. Dkt. No. 48 at 56.

8

Adv. Dkt. No. 48 at 60. Domita testified that the total value of the items in the vehicle was between $500 and $600. Adv. Dkt. No. 48 at 65.

Craft Auto did not call any witnesses to testify that had personal knowledge of the contents of the Houses' vehicle at the time it was repossessed, (Adv. Dkt. No. 48 at 86), but it did elicit testimony from Miller as to its business practices concerning personal items found in repossessed vehicles. Its "general practice" is to "inventory the vehicle looking for anything of value and anything of value like a purse or cell phone or something of that nature would be brought into the office, tagged with the customer's name on it and put into the safe." Adv. Dkt. No. 48 at 77. On redirect, Miller also identified "a wallet or an iPod or, you know, a tablet or computer" as things that are "obvious[ly] of value" that would have been placed in the safe. Adv. Dkt. No. 48 at 106. Miller further testified that if Craft Auto had found "identification badges, birth certificates, things like that," then it would not have destroyed them. Adv. Dkt. No. 48 at 82-83.

The Court finds that the Houses are entitled to recover $500 for the contents of their vehicle that were improperly destroyed by Craft Auto. Because the car was not insured until after the start date of the potential employment, the Court does not award any damages for lost income. Further, the Court does not award damages for the missed medical appointments.

2. Punitive Damages

"The Fifth Circuit has held that an 'egregious conduct' standard applies in considering an award of punitive damages." *In re Adams*, 516 B.R. at 374 (quoting *Young v. Repine (In re Repine)*, 536 F.3d 512, 521 (5th Cir. 2008)). The Fifth Circuit previously found a "violator's conduct egregious because she violated a stay despite repeated warnings and bankruptcy court admonishments not to do so." *Monge v. Rojas (In re Monge)*, 826 F.3d 250, 256 (5th Cir. 2016) (discussing *In re Repine*). But the Fifth Circuit has also held that a "refusal to relinquish possession

9

of" estate property did not rise to the level of egregious conduct "because there was no evidence that the [debtors] ever notified [the violators] that their conduct violated the automatic stay as distinguished from the lease agreement . . . and because [the violators] believed that they had the right to possess the" property. *Id.* The Court finds this case to be more akin to *Monge* than *Repine* because a good faith negotiation related to the return of the vehicle did occur but was ultimately unsuccessful and there was little communication between the parties after negotiations broke down. Further, the Court does not find Craft Auto to have a history of violations of the automatic stay, egregious or not, to show that it is a bad actor in bankruptcy. Therefore, the Court will not award punitive damages but cautions Craft Auto against similar behavior in the future.

C. Attorney's Fees

"[A]n individual injured by any willful violation of a stay provided by this section shall recover . . . costs and attorneys' fees. . . ." 11 U.S.C. § 362(k)(1). Because the Court found above that the Houses were injured by Craft Auto's willful violation of the automatic stay, they are entitled to recover attorney's fees and costs related to this action and the turnover of their vehicle. The Houses may submit a fee itemization and supporting affidavit as required by the Court's local rules within fourteen days of the entry of this order. *See* Miss. Bankr. L.R. 7054-1(b)(2)(A)-(B).

IV. Conclusion

The Court finds that Craft Auto willfully violated the automatic stay by retaining the Houses' vehicle after they had shown that the vehicle was insured. Further, the Court awards the Houses $500 in actual damages but denies the request for punitive damages. Lastly, the Court awards the Houses attorney's fees and costs related to this action, and a fee itemization may be submitted in accordance with the local rules within fourteen days of the date of entry of this order.

**IT IS HEREBY ORDERED** that the Defendant Craft Auto Sales, LLC, willfully violated the automatic stay provided by 11 U.S.C. § 362(a).

**FURTHER ORDERED** that Plaintiffs Jamie Lee House and Domita Tawnee House are awarded actual damages in the amount of $500 and that no punitive damages are awarded.

**FURTHER ORDERED** that Plaintiffs Jamie Lee House and Domita Tawnee House shall submit to the Court within fourteen days any request for attorney's fees.

**FURTHER ORDERED** that in accordance with Federal Rule of Civil Procedure 58 as applied by Federal Rule of Bankruptcy Procedure 7058, the Court shall enter final judgment by separate order.

*##END OF ORDER##*